1 Richard G. Novak, State Bar No. 149303
RICHARD G. NOVAK, APLC
2 65 North Raymond Avenue, Suite 320
Pasadena, California 91103
3 Tel:    (626) 578-1175
Fax:    (626) 685-2562
4 E-mail: richard@rgnlaw.com

5 D. Jay Ritt, State Bar No. 138661
Tiffany W. Tai, State Bar No. 193271
6 RITT, TAI, THVEDT & HODGES, LLP
65 North Raymond Avenue, Suite 320
7 Pasadena, California 91103
Tel:    (626) 685-2550
8 Fax:    (626) 685-2562
E-mail: ritt@rtthlaw.com, tai@rtthlaw.com

9
Attorneys for Plaintiff JOHN DOE

10

11 **UNITED STATES DISTRICT COURT**

12 **CENTRAL DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| JOHN DOE, an individual, | ) Case No. |
| Plaintiff, | ) |
| | ) **COMPLAINT FOR INJUNCTIVE,** |
| vs. | ) **DECLARATORY AND** |
| | ) **MONETARY RELIEF** |
| WILLIAM P. BARR, in his personal | ) |
| capacity and official capacity as | ) |
| Attorney General of the United States | ) **(Joint Stipulation Allowing Plaintiff** |
| of America; the UNITED STATES | ) **to Proceed in this Action Under the** |
| DEPARTMENT OF JUSTICE; | ) **Pseudonym "John Doe" and** |
| CHRISTOPHER A. WRAY, in his | ) **[Proposed] Order Thereon Filed** |
| personal capacity and official capacity | ) **Concurrently Herewith)** |
| as Director of the FEDERAL | ) |
| BUREAU OF INVESTIGATION; the | ) |
| FEDERAL BUREAU OF | ) |
| INVESTIGATION and DOES 1 | ) |
| through 10, Inclusive, | ) |
| Defendants. | ) |
| | ) |

Plaintiff JOHN DOE ("Plaintiff") brings this action for injunctive, declaratory and monetary relief pursuant to the Privacy Act of 1974 (5 U.S.C. §552a *et seq.*), the Administrative Procedure Act of 1946 (5 U.S.C. §500 *et seq.*), the All Writs Act (28 U.S.C. §1651(a)), Article III, Sec. 1 of the U.S. Constitution, the Fourth, Fifth and Eighth Amendments to the U.S. Constitution, and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

## JURISDICTION AND VENUE

This Court has well-established jurisdiction over this action pursuant to 5 U.S.C. §552a(g)(1), 5 U.S.C. §702, and 28 U.S.C §§1331, 2201 and 2202.

Plaintiff avers that this Court also has jurisdiction to grant the relief to which Plaintiff is equitably entitled pursuant to the All Writs Act (28 U.S.C. §1651(a).)[1]

Venue in this jurisdictional district is proper under 5 U.S.C. §552a(g)(5) and 28 U.S.C. §1391(e) because Plaintiff resides in this district.[2]

---

[1] The All Writs Act provides, in pertinent part, that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. §1651(a). The Supreme Court has counseled that "[i]n determining what auxiliary writs are "agreeable to the usages and principles of law," we look first to the common law." *Price v. Johnston*, 334 U.S. 266, 281 (1948). Numerous forms of writs existed at common law including, but not limited to, *habeas corpus ad subjiciendum, habeas corpus ad prosequendum, habeas corpus testificandum, and deliberandum.* 3 Blackstone's Commentaries 129-130. The writ of *habeas data*, which would have been an anachronism at the time of Blackstone, is now broadly accepted in many countries including, but not limited to, the European Community, Brazil, Columbia, Paraguay, Peru, Argentina, Bolivia, Ecuador, Venezuela and the Philippines. The writ of *audita querela*, long recognized at common law and in recent American jurisprudence, is also available where a collateral consequence to a criminal conviction is imposed after the fact or is otherwise constitutionally problematic.

[2] Pursuant to the stipulation of Plaintiff and certain Defendants that Plaintiff may proceed in this action as "John Doe," undersigned counsel have provided the United States Attorney for the Central District of California, counsel for certain Defendants, with the true name and domicile information for Plaintiff.

# PARTIES

Plaintiff JOHN DOE is a citizen of the United States and resides in the State of California, County of Los Angeles.

Defendant WILLIAM P. BARR is currently the Attorney General for the United States and has supervisory authority over the United States Department of Justice.

Defendant UNITED STATES DEPARTMENT OF JUSTICE ("USDOJ") is an agency within the meaning of 5 U.S.C. §§552a(a)(1) and 552(f) and is in possession and/or control of documents pertaining to Plaintiff.

Defendant CHRISTOPHER A. WRAY is currently the director of the Federal Bureau of Investigation.

Defendant FEDERAL BUREAU OF INVESTIGATION ("FBI") is an agency within the meaning of 5 U.S.C. §§552a(a)(1) and 552(f) and is in possession and/or control of documents pertaining to Plaintiff.

The true names and capacities, whether individual, corporate, associate or otherwise, of defendants sued herein as DOES 1 through 10, inclusive, are unknown to Plaintiff who therefore sues those defendants by such fictitious names.  Plaintiff will amend this Complaint to insert the true names and capacities of such DOE defendants when the same have been ascertained.

Plaintiff is informed and believes, and thereon alleges, that each defendant designated herein as a DOE is responsible in some manner for the occurrences and events herein alleged, that each is an individual or entity to be enjoined from engaging in the wrongful conduct at issue, and whose wrongful conduct is subject to the declaratory relief Plaintiff seeks.  Moreover, Plaintiff's damages were proximately caused by their conduct.

Plaintiff is informed and believes, and thereon alleges, that unless otherwise specifically mentioned, each defendant was an agent, employee, or co-conspirator

of each of the remaining defendants, and that in doing the things complained of herein was acting within the course and scope of such agency, employment or conspiracy.

**GENERAL ALLEGATIONS**
**COMMON TO ALL CAUSES OF ACTION**

A.    **Introduction**

This action arises out of, and seeks to mitigate, the arbitrary and capricious, unfair, largely unintended and relentless "digital punishment" of Plaintiff that continues to this day because of the continuing availability on the internet of numerous press releases issued by the United States Department of Justice ("USDOJ") during the long-ago concluded prosecution of Plaintiff.  These stale press releases live in the digital archives of both the Office of the United States Attorney for this District and the Federal Bureau of Investigation, and are readily accessible to anyone conducting an internet search of Plaintiff's name.

Plaintiff pled guilty over a decade ago to allegations of non-violent federal crimes related to purported mortgage fraud, the conduct at issue itself occurring nearly twenty (20) years ago.  Plaintiff served a brief term of imprisonment, which ended with his release in 2014.  His post-release supervision ended in 2017.  Plaintiff paid all restitution ordered by this Court.  Both before and since his alleged fraudulent criminal conduct nearly twenty (20) years ago, Plaintiff has not been implicated in any other criminal behavior of any sort at any time in his life.  Plaintiff indisputably has fully paid his debt to society.

However, as a result of the ubiquitous nature of the internet, and the ease of availability to anyone of the preserved digital information – the subject press releases – related to those long-ago events, Plaintiff has been unfairly subjected to arbitrary, oppressive, unfair and unintended stigma and impairment of his right

and ability to lead a productive life.  The stale press releases regarding Plaintiff's indictment, unilaterally issued by a press officer for the federal government years ago, are still continuously maintained in an open digital space easily accessible to anyone with a Wi-Fi connection, without any applicable legal standards or requirements as to their maintenance, preservation and availability to the public at large.  As a result, a simple Google search of Plaintiff by any person interested in any aspect of Plaintiff's life yields immediately the decades-old press releases about Plaintiff's alleged conduct, long-since fully punished, yet immortalized as a functional scarlet letter and a form of "digital punishment," despite the absence of any intention by the sentencing court that he be subjected to such punishment at all, let alone for the rest of his life.

Plaintiff's plight in this regard is not unique.  Recognizing the inherent unfairness and excessively punitive cost of this kind of "digital punishment" to both former offenders and society at large, courts in this country and across the globe have the statutory and inherent authority to fashion remedies to mitigate the unintended, unfair, cruel and unusual punishment which has inadvertently arisen as a result of this toxic dynamic in the age of the internet and preserved digital data.

By way of this action, and pursuant to analogous federal, state and international case and statutory law, as well as current legal standards posited by thoughtful scholars under these circumstances, Plaintiff seeks an order from this Court compelling the federal government to remove from unfettered public access the stale press releases prepared, issued and still maintained without any standards whatsoever by the FBI and USDOJ related to Plaintiff's distant in time prosecution.

/ / /

/ / /

**B.** **Unintended Development of "Digital Punishment" and Its Deleterious Effects on Both Individual Ex-Offenders and Society At Large**

Criminal convictions in this country have become a mass phenomenon. Today, nearly 20 million Americans – 1 in 12 adults – have a felony conviction.[3] The figures for misdemeanors are much higher.[4]  Over the same time period, advances in information technology have made collection and indexing of criminal history information more efficient than ever before.  The ubiquity of the internet has allowed for unprecedented dissemination and availability of persons' criminal histories.  A person's criminal history is now considered to be one of the most important elements of his or her public identity.  A former offender's background is routinely scrutinized by everyone from potential employers, lenders and clients to neighbors, acquaintances, and partners.  *See, e.g*., Allesandro Corda, More Justice and Less Harm: Reinventing Access to Criminal History Records, 60 How.L.Journal 1, 3-4 (2016).[5]

Unfortunately, the ill-fated combination of uncoordinated factors has led over time to pervasive informal collateral consequences of this so-called "digital punishment."  The current state of affairs is an unintended consequence of open records movement, compounded by the development of information technology

[3]      Sarah Shannon, et al., Growth in the U.S. Ex-Felon and Ex-Prisoner Population, 1948-2010, 11-12 (April 2011) (unpublished paper, Princeton University), http://paa2011.princeton.edu/papers/111687.

[4]      Comprehensive studies on misdemeanors are not available.  However, they are far more common than felony convictions.  *See, e.g.*, Alexandra Natapoff, Misdemeanors, 85 S. Cal. L. Rev. 101, 102-03, 108 (2012) (citing data estimating approximately 10.5 million non-traffic misdemeanor prosecutions occurring nationally every year); Jenny M. Roberts, Crashing the Misdemeanor System, 70 Wash. & Lee L.Rev. 1089, 1090-91 (2013) (quoting studies showing that misdemeanors make up more than 75 percent of state criminal caseloads).

[5]      This has not always been so.  The relevance and effects of criminal history information have dramatically changed over time.  Until relatively recently, there was widespread agreement that indiscriminate dissemination of criminal history information is inimical to society's and ex-offenders' interests in their successful reintegration.  Many fewer individuals were convicted and criminal records were not readily accessible.  *Id.,* at 3-4.

and the internet, and emergence of a private industry that trawls, sells, and often sensationalizes criminal records.  Such industry has made access to criminal history information easy, cheap, ubiquitous, and unlimited in time.  *Id.,* at 3-5.

The visibility and availability of criminal records and their adverse effects on both the ex-offender and society at large now fundamentally affects the scale of severity of penalties imposed at sentencing.  "Digital punishment" has become a distinctive facet of the excessiveness and disproportionality of punishment in the American criminal justice system.  Criminal history information leaves marks on ex-offenders that pervade and affect crucial aspects of their lives long after the imposed sentence has been served.

Criminologist Neil Shover, in a classic 1980s study of ex-offenders who had earlier committed ordinary crimes, coined the expression "stigma erosion." He describes the increasing certainty of ex-offenders over time that no one would discover their criminal history.  Most interviewees reported that third-party disclosure of their criminal history record was rare and mostly confined to contacts with bureaucracies and other branches of government with "inflexible or other special policies for dealing with ex-convicts."[6]

This is no longer true.  Millions of Americans are today routinely confronted by heavy burdens arising from past wrongdoing; the negative label "offender" has become increasingly sticky and visible.  Previously, ex-offenders were potentially discreditable from records that were largely hidden from public scrutiny.  Today they are discredited by criminal history information that is widely known and publicly accessible.[7]

---

[6]    Neal Shover, Aging Criminals 62 (1985).
[7]    *See* Erving Goffman, Stigma: Notes on the Management of Spoiled Identity 4 (1963); *see also* Christopher Uggen & Lindsay Blahnik, The Increasing Stickiness of Public Labels, in Global Perspectives on Desistance 222, 222 (Joanna Shapland, et al., eds., 2016) (noting that "new and disruptive technologies now make these labels more accessible and consequential ….  People now know more about their fellow citizen than ever before, such that labels are increasingly difficult to "peel off," dissolve, and remove").

Readily accessible criminal history records do unnecessary harm in two major ways.  First, they damage a person's public persona and reputation by imposing an enduring stigma that frequently leads to a spiral of individual and familial harms, both psychological and social.[8]  Second, widespread dissemination of criminal history records results in the loss of economic and other opportunities, even in the absence of laws or regulations that make ineligibility and differential treatment of ex-offenders mandatory or discretionary.  Public availability and dissemination of criminal history records thus "amplify punishment beyond the sanctions imposed by the criminal justice system."[9]

Unlike the formal consequences of adjudicated criminal conduct which are determined and imposed by Courts through a rigorous process of evaluation of defined factors, the enhanced stigma and related forms of discrimination

---

[8]    *See* Michelle Alexander, The New Jim Crow: Mass Incarceration in the Age of Colorblindness 94 (2010) ("Once a person is labeled a felon, he or she is ushered into a parallel universe in which discrimination, stigma, and exclusion are perfectly legal … ."); *see also* Jamila Jefferson-Jones, A Good Name: Applying Regulatory Takings Analysis to Reputational Damage Caused by Criminal History, 116 W. Va. L. Rev. 497, 505-07 (2013).  Howard S. Becker, Outsiders: Studies in the Sociology of Deviance 31 (1963), was the first scholar to argue that having a criminal record can become a status that affects and nullifies views others have of a person.  "One of the most crucial steps in the process of building a stable pattern of deviant behavior is likely to be the experience of being caught and publicly labeled as a deviant."  *Id.*

[9]    *See* Bruce Western, Punishment and Inequality in America 109-14 (2006); David J. Harding, Jean Valjean's Dilemma: The Management of Ex-Convict Identity in the Search for Employment, 24 Deviant Behav. 571 (2003); Christopher Uggen, The Effect of Criminal Background Checks on Hiring Ex-Offenders, 7 Criminology & Pub. Pol'y 367 (2008).  *See generally* Devah Pager, Marked, Race, Crime, and Finding Work in an Era of Mass Incarceration (2007) (detailing the difficulties faced by ex-offenders, both white and black, in trying to find jobs after release); Megan C. Kurlychek, et al., Scarlet Letters and Recidivism: Does An Old Criminal Record Predict Future Offending?, 5 Criminology & Pub. Pol'y 483, 484 (2006).

stemming from the ubiquitous accessibility and dissemination of digital criminal history records arise completely independently of specific legal authority and trigger adverse repercussions utterly independent from and unintended by the Court's defined punishments.  They are non-codified overspills of conviction that new technologies have turned into social practices embedded in the social body. In practice, large swaths of the public – employers, investors, lenders, housing providers, educators – use these kinds of "digital punishments" to impose continued, indefinite and undefined status degradation.[10]

The adverse effects of "digital punishment" do not simply unfairly burden the ex-offender.  This kind of "digital punishment" burdens the community, as well.  Effective arrangements must be implemented to ensure that ex-offenders can put past wrongdoing behind them.  Limiting the availability and dissemination of criminal history records should rightfully be seen as an element of public policy whose primary goal is enhancement of the effectiveness of reentry programs for ex-offenders.

Current and comparative data suggest that excluding ex-offenders from access to legitimate economic opportunities and re-engagement with the community is criminogenic.  Many ex-offenders have been denied legitimate opportunities that make pro-social lives as law-abiding citizens more likely. Preventing third parties unfettered access to criminal conviction records ("CCRs") and focusing on reintegration programs are more effective ways to prevent re-offending.  To put it succinctly, the less opportunities available to ex-offenders who have paid their respective debts to society, the more likely the ex-offender is statistically to re-offend, and the greater the risk to the community at large.

---

[10]   Allesandro Corda, More Justice and Less Harm: Reinventing Access to Criminal History Records, 60 How.L.Journal 1, 11-12 (2016) (with citations to many sources).

Unfettered "digital punishment" therefore contributes to – and does not reduce – the likelihood of additional crimes and criminal behavior.[11]

### C.   Current Remedies Fashioned by Courts and Legislatures to Mitigate Unfair "Digital Punishment"

As a result of the harms described above, mitigation of the unintended power of too easily publicly-available criminal records has therefore been recognized by legal scholars and judges as much needed.  In the United States, many remedial and mitigation efforts have been pursued federally and at the state level – both legislatively and through the proper exercise of judicial discretion.  At the legislative level, the most prominent remedial and mitigating efforts have taken the form of "Ban the Box" legislation (prohibiting employers from asking employment applicants in certain sectors from disclosing at the initial stages of the employment process their past criminal history); the availability of Court orders sealing and/or expunging certain criminal records; and the availability of "certificates of relief or rehabilitation" for ex-offenders.[12]

At the federal level, even though the availability of a Court order expunging a criminal record is severely limited, district court judges have exercised their discretion to fashion equitable relief for deserving ex-felons seeking some mitigating relief from the unintended effects of certain forms of "digital punishment" occasioned by too-easy access to their criminal records.  *See, e.g., Jane Doe v. United States,* 168 F.Supp.3d 427 (S.D.N.Y. 2016).

In most continental European countries, the public availability of offenders' criminal records has been formally labeled as a form of punishment.  Public access to those records is explicitly imposed as an ancillary penalty that supplements the main punishment imposed at sentencing, and only in the kinds

---

[11]  *Id., at* 53-58 (numerous citations omitted).
[12]  *Id., at* 19-23 (numerous citations omitted).

of cases specified in penal statutes.  When imposed, public dissemination is applied only for a limited period chosen from within a pre-determined range. Most importantly, imposition is limited only to cases in which a solid justification can be provided in relation to the seriousness or special characteristics of the offense of conviction.  Moreover, in order to reduce informal discrimination against people with criminal convictions, individual criminal history information is generally not available to non-criminal justice agencies, and much less to private vendors, the media, and the general public.[13]

Most recently, the European Union has codified new privacy laws which reflect the development of the so-called "right to be forgotten" – the right of an individual to have certain past misconduct, including past criminal history, removed from readily-available digital access.[14]

In addition, other countries have developed and recognized the *writ of habeas data*, a remedy similar to our writ of habeas corpus, but which focuses the Court's remedial powers with respect to improperly held data, as opposed to an actual individual.[15]

An equitable remedy long available in the American judicial system, the writ of *audita querela*, is also available where a collateral consequence to a conviction is imposed after the fact or otherwise is constitutionally problematic.[16]

In this action, Plaintiff does not seek an order precluding the government from maintaining official court records created in the course of formal legal

[13] *Id. at* 45-46 (citations omitted).
[14] Robert Walker, The Right To Be Forgotten, 64 Hastings L.J. 257, 271-274 (2012); May 13, 2014 Decision of the Supreme Court of the European Union in the matter entitled *Google Spain, SL, Google Inc. v. Agencia Espanola de Proteccion de Datos (AEPD), Mario Costejo Gonzalez.*
[15] Sarah Lode, "You Have The Data"…The Writ Of Habeas Data And Other Data Protection Rights: Is The United States Falling Behind?  94 Ind.L.J.Supp. 41 (2018).
[16] *See, e.g., United States v. LaPlante*, 57 F.3d 252, 253 (2d Cir. 1995) ("Though formally abolished in civil cases, the writs of error coram nobis and audita querela remain available in very limited circumstances with respect to criminal convictions." (internal citations omitted)).

proceedings.  Nor does he seek a certificate of rehabilitation or an order of expungement.  He seeks far less: a declaratory judgment that the continuous availability on the government's digital archives of press releases concerning Plaintiff's long-ago concluded criminal proceeding violates his statutory and constitutional rights, as set forth below and as will be proven at trial, and the concomitant injunctive relief that would ameliorate the wrongful conduct.  These stale press releases are not and never were the official records of any proceeding, and the maintenance of these stale press releases for easy availability to the public after the conduct at issue and many years after the completion of formal punishment has concluded continues to punish Plaintiff based on the unilateral actions of an executive branch press officer years ago.

These wrongful actions further stigmatize Plaintiff and his family in a manner not contemplated or intended by the sentencing court, they continue to interfere with Plaintiff's economic opportunities, and they arbitrarily undermine legislative intent to maximize re-integration opportunities for those who have completed their judicially-imposed punishment subsequent to a criminal conviction.[17]


### D.   Plaintiff's Criminal Proceeding

Almost 20 years ago, Plaintiff was one of many subjects of a USDOJ and FBI investigation of alleged mortgage fraud in real estate transactions in Southern California.  In May 2007, Plaintiff executed a cooperation plea agreement under which he agreed to plead guilty to a five-count Information and to assist the government in its investigation and prosecution of others.  Three months later, in August 2007, Plaintiff waived indictment and entered a plea of guilty.  Other than this offense, Plaintiff has no other criminal history.

---

[17]   *See e.g.* Second Chance Act of 2007 Community Safety Through Recidivism Prevention, 110 P.L. 199, 122 Stat. 657.

In September 2011, the district court sentenced Plaintiff to an 18-month term of imprisonment to be followed by three years of supervised release. Plaintiff completed his restitution payments in 2012. Plaintiff surrendered to the Bureau of Prisons ("BOP") on August 23, 2013, and was released on December 12, 2014. Plaintiff's three-year term of supervised release expired on December 11, 2017.

### E.   The Government's Stale Press Releases are Still Available to the Public

Despite paying his debt to society by fulfilling all of the terms of the judgment in his criminal case (serving 18 months of imprisonment, three years of supervised release and paying all restitution ordered by the Court), Plaintiff continues to be punished and his privacy and other constitutional rights are violated by the continuing availability today of several stale press releases issued by the Department of Justice regarding Plaintiff's prosecution and sentencing, including but not limited to, the following:

i)   On May 25, 2007, the same date that the Information and cooperation plea agreement were filed, the United States Attorney's Office for the Central District of California ("USAO") issued a press release announcing that Plaintiff had agreed to plead guilty. The press release detailed the charges against Plaintiff, described the conduct underlying the charges, and identified Plaintiff's place of employment.

ii)   In October 2008, the USAO issued a press release concerning the sentencing of a defendant in a separate but related prosecution and referred to Plaintiff as one of the defendants who had pled guilty.

iii)   In August 2009, the USAO issued another press release after a jury convicted two individuals on related charges, and again referred to Plaintiff as one of the defendants who had pled guilty.

iv)    In September 2011, the USAO issued a press release announcing that Plaintiff had been sentenced.  The press release detailed the term of imprisonment imposed, the surrender date, the restitution order, the victims, Plaintiff's employment history, and the other charged individuals.  It also reiterated the conduct underlying Plaintiff's offense.

These press releases did more than enumerate the charges against Plaintiff and set forth his sentence.  They included details concerning the conduct, which occurred more than 15 years ago, and included personal, private information about Plaintiff's work history, his positions at various companies, his city of residence, and the other charged individuals.

More than a decade after Plaintiff was initially charged, more than eight years after he was sentenced, and now, even after Plaintiff has completed all of the terms of his judicially imposed punishment, these press releases continue to be made available to the public through USDOJ and FBI websites.  The press releases are accessible through simple internet searches utilizing Plaintiff's name and are often the first results when Plaintiff's name is searched on several third-party search engines.[18]

### F.    Plaintiff's Efforts to Resolve this Dispute Through Informal Channels

After completion of his restitution obligation and release from imprisonment and at the tail end of his term of supervised release, Plaintiff expended significant effort to identify individuals within the USAO, USDOJ and the FBI who could explain when press releases describing conduct that was more than a decade old would no longer be easily available to the public, and if there

---

[18]    It is Plaintiff's intention to lodge under seal with this Court a complete set of the press releases as soon as this action has been assigned to the judicial officers who will preside over this action.

are any government policies and procedures in place concerning how stale press releases are maintained in government archives and under what conditions they are made available to the public.

None of these government agencies ever produced any policies and procedures concerning these matters, nor did they identify government officials who have the authority to develop, implement and administer such policies and procedures.

Plaintiff thereafter made significant efforts to engage the USAO in discussions concerning the manner in which the government's arbitrary and capricious continued republication of stale press releases through its internet-accessible archives violate Plaintiff's rights under various statutes and constitutional provisions. Plaintiff and the USAO were not able to resolve their disputes.

### G.    Plaintiff's Effort to Seek Relief in the Context of His Criminal Proceeding

In light of the USAO's refusal to remedy the harms brought to its attention by Plaintiff, Plaintiff filed in 2017, in the district court, and within his criminal proceeding, a motion to compel USDOJ to eliminate public access to electronically stored press releases regarding the underlying criminal case and the then-completed punishment.

The USAO opposed the motion. While the USAO argued that Plaintiff was not entitled to relief on the merits of his legal arguments, the USAO also argued that the district court lacked jurisdiction within the confines of the criminal case to rule on Plaintiff's claims. The USAO specifically argued that in order to obtain the relief he was seeking, Plaintiff should be required to bring an independent civil action.

Without oral argument or an evidentiary hearing, the district court denied Plaintiff's motion, but did not specify the grounds for its decision.

Plaintiff thereafter noticed an appeal of the district court's order denying his motion.  In order to preserve the privacy Plaintiff argues he is entitled to more than a decade after his conviction, Plaintiff sought to proceed under seal in the Ninth Circuit.  The USAO opposed this effort, seeking to force Plaintiff to elect to either republicize his old conduct in the course of seeking remedies for the government's continued republication of stale press releases, or abandon his effort to vindicate his rights lest he bring more attention to his old conduct.

At the USAO's urging, the Ninth Circuit denied Plaintiff's motion to seal the proceedings, but then remanded the matter to the district court with instructions to deny the motion *only* on the jurisdictional grounds urged by the USAO.  The Ninth Circuit did not address the merits of Plaintiff's claims.  Thereafter, the district court did as it was instructed to do by the Ninth Circuit, denying Plaintiff's motion "for lack of jurisdiction" only.

Plaintiff now brings, through this civil action, the claims that the USAO argued to the district court and to the Ninth Circuit that he could only bring through a free-standing civil action.

## **FIRST CAUSE OF ACTION**

### **Violation of the Privacy Act:  Improper Dissemination**

### **[5 US.C. §§552a *et seq.*]**

### **(Against USDOJ and FBI)**

Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

The USDOJ and the FBI, by continuing to make the press releases and other personal, private information about Plaintiff available and accessible on its

website, knowingly disseminate information protected by the Privacy Act concerning Plaintiff.  This information includes, but is not limited to, details of Plaintiff's arrest and conviction, details of the conduct underlying Plaintiff's arrest and conviction, and information concerning Plaintiff's work history and city of residence.

The USDOJ and FBI's conduct violate the Privacy Act by, among other things, failing to maintain records pertaining to Plaintiff with such "accuracy, *relevance, timeliness*, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to [Plaintiff] that may be made on the basis of such record."  5 U.S.C. §552a(g)(1)(C).

Plaintiff has requested that the USDOJ and FBI eliminate public access to the information protected by the Privacy Act on numerous occasions, but his efforts have been repeatedly rebuffed by Defendants.

As a direct and proximate result of the USDOJ and FBI's conduct, Plaintiff has suffered adverse and harmful effects including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and has lost or jeopardized present or future financial opportunities.

The USDOJ and FBI's conduct, unless and until enjoined and restrained by order of this Court, will continue to cause great and irreparable injury to Plaintiff, and Plaintiff has no other adequate remedy at law for the injuries currently being suffered, in that the personal, private information concerning Plaintiff will continue to be available and accessible through the USDOJ and FBI websites, and continue to damage Plaintiff.

/ / /

/ / /

/ / /

### SECOND CAUSE OF ACTION

### Violation of the Administrative Procedure Act

### [5 US.C. §§500 *et seq.*]

### (Against USDOJ and FBI)

Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

The Administrative Procedure Act ("APA") provides for judicial review of any agency action which adversely affects a person within the meaning of a relevant statute.  5 U.S.C. §702.

A reviewing court may "hold unlawful and set aside agency action . . . found to be . . . contrary to [a Constitutional right]."  5 U.S.C. §706(2)(B).

The USDOJ and FBI, by continuing to make the press releases and other personal, private information about Plaintiff available and accessible on its websites, knowingly disseminate information that is protected by Plaintiff's right to privacy, a right that is guaranteed by the United States Constitution.

Plaintiff has requested that the USDOJ and FBI eliminate public access to the information protected by his Constitutional right to privacy on numerous occasions, but his efforts have been repeatedly rebuffed by Defendants.

As a direct and proximate result of the USDOJ and FBI's conduct, Plaintiff has suffered adverse and harmful effects including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and has lost or jeopardized present or future financial opportunities.

The USDOJ and FBI's conduct, unless and until enjoined and restrained by order of this Court, will continue to cause great and irreparable injury to Plaintiff, and Plaintiff has no other adequate remedy at law for the injuries currently being suffered, in that the personal, private information concerning Plaintiff will

continue to be available and accessible through the FBI's website, and continue to damage Plaintiff.

### THIRD CAUSE OF ACTION
### Violation of the Separation of Powers
### [U.S. Const. Art. III, Sec. 1]
### (Against Defendants Barr, Wray and Does 1 through 10)

Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

The actions of Defendants Barr, Wray and Does 1 through 10, in continuing to make the press releases and other personal, private information about Plaintiff available and accessible on the USDOJ and FBI websites after Plaintiff's sentencing and completion of all terms of the criminal judgment, violate the separation of powers provisions of the United States Constitution.

The continuous republication, after sentencing, by the USDOJ and the FBI of personal and private information about Plaintiff, his conduct and the results of his criminal proceeding violate the separation of powers provisions of the United States Constitution by permitting the executive branch to unilaterally impose punishment on Plaintiff beyond that properly imposed by the judicial branch and without the supervision of the judicial branch.

Plaintiff has requested that Defendants eliminate public access to the post-sentencing information continually republished by the USDOJ and FBI without judicial review, but his efforts have been repeatedly rebuffed by Defendants.

As a direct and proximate result of Defendants' conduct, Plaintiff has suffered adverse and harmful effects including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and has lost or jeopardized present or future financial opportunities.

Defendants' conduct, unless and until enjoined and restrained by order of this Court, will continue to cause great and irreparable injury to Plaintiff, and Plaintiff has no other adequate remedy at law for the injuries currently being suffered, in that the personal, private information concerning Plaintiff will continue to be available and accessible through the USDOJ and FBI's websites, and continue to damage Plaintiff.

## FOURTH CAUSE OF ACTION
### Violation of the Constitutional Right to Privacy
### [U.S. Const. Amend. IV and V]
### (Against Defendants Barr, Wray and Does 1 through 10)

Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

The actions of Defendants Barr, Wray and Does 1 through 10, in continuing to make the press releases and other personal, private information about Plaintiff available and accessible on the USDOJ and FBI websites, violate Plaintiff's clearly established right to privacy as guaranteed under the United States Constitution.

Plaintiff has requested that Defendants eliminate public access to the information protected by his Constitutional right to privacy on numerous occasions, but his efforts have been repeatedly rebuffed by Defendants.

As a direct and proximate result of Defendants' conduct, Plaintiff has suffered adverse and harmful effects including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and has lost or jeopardized present or future financial opportunities.

Defendants' conduct, unless and until enjoined and restrained by order of this Court, will continue to cause great and irreparable injury to Plaintiff, and Plaintiff has no other adequate remedy at law for the injuries currently being suffered, in that the personal, private information concerning Plaintiff will continue to be available and accessible through the USDOJ and FBI's websites, and continue to damage Plaintiff.

**FIFTH CAUSE OF ACTION**

**Violation of the Constitutional Right to be Free From**

**Cruel and Unusual Punishment**

**[U.S. Const. Amend. VIII]**

**(Against Defendants Barr, Wray and Does 1 through 10)**

Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

The actions of Defendants Barr, Wray and Does 1 through 10, in continuing to make the press releases and other personal, private information about Plaintiff available and accessible on the USDOJ and FBI websites, violate Plaintiff's clearly established right to be free from cruel and unusual punishment as guaranteed under the United States Constitution.

Plaintiff has requested that Defendants refrain from imposing further punishment on Plaintiff, and to eliminate public access to the information protected by his Constitutional right to privacy, on numerous occasions, but his efforts have been repeatedly rebuffed by Defendants.

As a direct and proximate result of Defendants' conduct, Plaintiff has suffered adverse and harmful effects including, but not limited to, mental distress, emotional trauma, embarrassment, humiliation, and has lost or jeopardized present or future financial opportunities.

Defendants' conduct, unless and until enjoined and restrained by order of this Court, will continue to cause great and irreparable injury to Plaintiff, and Plaintiff has no other adequate remedy at law for the injuries currently being suffered, in that the personal, private information concerning Plaintiff will continue to be available and accessible through the USDOJ and FBI's websites, and continue to damage Plaintiff.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff requests that this Court grant the following relief:

A.     An order ***expunging*** from the press releases information about Plaintiff, or alternatively ***enjoining*** Defendants from continuing to make available on the USDOJ and FBI websites the press releases and other information concerning Plaintiff;

B.     A declaration that Defendants' conduct in making the press releases and other private, personal information about Plaintiff available and accessible through the USDOJ and FBI websites violates Plaintiff's rights under the Privacy Act and the United States Constitution;

C.     Compensatory damages to Plaintiff in an amount to be determined at trial;

D.     Award Plaintiff reasonable costs and attorney's fees as provided under the Privacy Act; and

/ / /

COMPLAINT

1        E.    Such other relief as the Court may deem just and proper.

2

3

4    DATED:  April 13, 2020    Respectfully submitted,

5

6        D. Jay Ritt
         Tiffany W. Tai
7        RITT, TAI, THEVDT & HODGES, LLP

8        Richard G. Novak
9        RICHARD G. NOVAK, APLC

10

11       */s/ Richard G. Novak*

12       _____
13       Richard G. Novak

14       *Attorneys for* Plaintiff JOHN DOE

15

16

17

18

19

20

21

22

23

24

25

26

27

28